MATTHEWS *et al. v.* CROFFORD.*

(*Jackson.* April Term, 1914.)

1. APPEAL AND ERROR. Review. Question reviewable.
 Only those matters assigned in the motion for new trial can be
 reviewed on appeal. (*Post, pp.* 548-551.)

2. LANDLORD AND TENANT. Surrender. Effect.
 Whil a surrender of demised premises, duly accepted, relieves the
 lessee, from any liability for rent subsequently accruing, yet
 where a lessee, who defaulted in payment and against whom the
 lessor had brought an action of unlawful detainer, retained pos-
 session pending a removal of the case to the circuit court, by
 giving the bond required by Shannon's Code, sec. 5111, a sur-
 render pending the litigation did not relieve the lessee and her
 surety from liability on the bond, consequently, while it was un-
 necessary for the court to render judgment awarding the lessor
 possession, yet under section 4702, providing that judgment
 should be molded to suit facts, the judgment should recite the
 facts, including the surrender, and declare the lessor entitled
 to possession and assess damages on the bond. (*Post, pp.*
 548-551.)
 Code cited and construed: Secs. 4702, 5111 (S.).
 Cases cited and approved: Hanaw v. Bailey, 83 Mich., 24; Ameri-
 can Bonding Co. v. Pueblo Investment Co., 150 Fed., 17; Boyd
 v. Gore, 143 Wis., 531.

3. LANDLORD AND TENANT. Rent. Forfeiture.
 In order to forfeit a lease for nonpayment of rent, the landlord
 must demand it on the day, due before sunset, and at the most
 public place on the land. (*Post, pp.* 551-554.)

4. LANDLORD AND TENANT. Rent. Nonpayment. Forfeiture.
 The necessity of demand, which is a condition precedent to the
 forfeiture of a lease for nonpayment of rent, may be waived by
 agreement in the lease. (*Post, pp.* 551-554.)

*On the question of acceptance of rent accrueing after cause
for forfeiture, with knowledge of such cause, as waiver of forfeiture,
see note in 11 L. R. A. (N. S.), 831.

5. LANDLORD AND TENANT. Nonpayment of rent. Forfeiture. Re-entry.

Before a landlord can declare a lease forfeited for nonpayment of rent, re-entry must be effected. (*Post, pp.* 551-554.)

6. LANDLORD AND TENANT. Forfeiture. Nonpayment of Rent. Re-entry. What Constitutes.

In view of Shannon's Code, sec. 5090, declaring that no person shall enter upon any lands and detain or hold the same, but where entry is given by law, then only in a peaceable manner, the action of unlawful detainer is a substitute for an entry by a landlord to forfeit a lease for nonpayment of rent; the institution of the action having the same effect as an entry. (*Post, pp.* 551-554.)

Cases cited and approved: Parks v. Hays, 92 Tenn., 161; Lewis v. Hughes, 12 Colo., 208; Guffy v. Hukill, 34 W. Va., 49; Crean v. McMahon, 106 Md. 507; Allen v. Keily, 17 R. I., 731; Whitney v. Brown, 75 Kan., 678, 468; Wilson v. Campbell, 75 Kan., 159; Davidson v. Phillips, 17 Tenn., 93, 95, 96.

7. LANDLORD AND TENANT. Nonpayment of rent. Forfeiture.

Where a tenant, against whom judgment for possession because of nonpayment of an installment rent, was rendered in unlawful detainer proceedings, begun in justice court, removed the proceedings to the circuit court, giving the *supersedeas* bond for the value of the rent of the premises during the litigation required by Shannon's Code, sec. 5111, it was unnecessary to institute successive actions to enforce the forfeiture for nonpayment of each installment of rent as it fell due, for the single *supersedeas* bond covered the whole contract. (*Post, pp.* 554, 555.)

Code cited and construed: Sec. 5111 (S.).

8. LANDLORD AND TENANT. Nonpayment of rent. Forfeiture.

Where a lessor declared a forfeiture of a lease for the nonpayment of an installment of rent, and instituted an action of unlawful detainer to recover possession, the lessee cannot, by a tender of the accrued rent, avoid the forfeiture. (*Post, pp.* 555, 556.)

Matthews v. Crofford.

Case cited and approved: Insurance Co. v. Diggs, 67 Tenn., 563, 569.

Case cited and distinguished: Lee v. Security Bank & Trust Co., 124 Tenn., 582.

9. **ABATEMENT AND REVIVAL.** Death of party. Revival. Necessary parties. "Leasehold."

Under Shannon's Code, sec. 511, "leaseholds" are interests in land descending to the heirs at law and hence where a lessee died pending an action of unlawful detainer by the lessor, the heirs at law of the lessee are necessary parties upon the revival. (*Post, pp.* 556, 557.)

10. **APPEAL AND ERROR.** Review. Questions presented.

Where the circuit court to which an action of unlawful detainer was appealed by the lessee, rendered judgment on the lessee's *supersedeas* bond, but failed to render judgment for possession against the heirs of the lessee, the action having been revived in the name of the heirs and administrator, of the lessee who died before judgment, the court of civil appeals may, upon appeal by the surety alone, reform the judgment and render judgment against the heirs. (*Post, pp.* 556, 557.)

Code cited and construed: Sec. 63 (S.).

Cases cited and approved: Spillman v. Walt, 59 Tenn., 574.

---

FROM SHELBY

---

Appeal from Circuit Court, Shelby County.—H. W. LAUGHLIN, Judge.

LEHMAN, GATES & MARTIN, for Matthews and North Memphis Savings Bank.

FANT & MOORE, for Crofford.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

On the 1st day of September, 1910, T. J. Crofford leased to Mrs. W. C. Deatherage certain real estate in the city of Memphis, for the term of two years, ending on August 31, 1912, at the price of $3,600, payable monthly in advance in twenty-four installments, represented by twenty-four promissory notes, each for the sum of $150, payable the first day of each month. The lease contained the following provisions for forfeiture:

"It is further agreed that in default of either one or more of said payments or any part thereof at maturity . . . this lease may be declared forfeited by said party [lessor] at his option, in which case the second party [lessee] shall be liable for all rents until the possession be delivered, and for all damages done to the premises; and the first party [lessor] shall have the right to re-enter and retain possession of said premises without being required to make demand of the same, or demand the payment of rents due, or to give notice of the nonpayment of the rent; and the first party [lessor] shall not become a trespasser by taking possession as aforesaid. . . . In case of default of the second party, so as to forfeit her lease, in her absence from this city, service of process upon any white adult occupying or in possession of the premises shall be good and valid service upon the second party."

All of the rents were paid up to a note falling due September 1, 1911. Those falling due prior to the day just mentioned were, many of them, not paid promptly, but were generally paid from the 23d to the 25th of the month. The rent notes were deposited in one of the banks of Memphis, and it was expected that the lessee would pay them as they fell due. She became so constantly remiss, however, in this duty, that they were placed in the hands of the agent of the bank who had charge of its real estate matters, the witness, Elmer Harris. He testified that he visited the lessee two or three times a month, urging her to pay the money, but frequently had to content himself with collecting it about the 23d or 25th.

"Q. What would you tell her when she would put off paying the rent this way? A. I would tell her I was not going to wait any longer, and try to bluff her out of it each month until I got it. I would tell her I was not going to do it the next month. Q. Did you tell her that every month? A. Yes, sir; every month, but it didn't do any good. Q. Did you have to see her more than every month? A. Yes, sir; every day or two."

The note due the 1st of September, 1911, was demanded but not paid. Thereupon, on the 2d day of September, 1911, a suit of unlawful detainer was brought before George B. Coleman, a justice of the peace of Shelby county, by Crofford to recover possession of the property. The writ was duly served

on Mrs. Deatherage on the same day, and on the 8th day of the month a judgment was rendered by the justice of the peace in favor of Crofford for the possession.

On the 13th of September Mrs. Deatherage filed her petition to obtain the writs of *certiorari* and *supersedeas* for the purpose of removing the cause into the circuit court of the county, and to restrain the enforcement of the writ of possession. Accompanying this petition she tendered into court $155.75, to cover the note and interest and costs.

She also executed a *supersedeas* bond with W. D. Matthews as surety in the penal sum of $3,600, conditioned to prosecute the petition with effect and, on default, to abide by and perform the judgment of the court trying the case; likewise to pay the costs.

On August 12, 1912, Mrs. Deatherage died, and the cause was thereafter duly revived in the name of her children, Charles Deatherage, James E. Lewis, and Mrs. J. I. Stewart, as her heirs at law, and in the name of the North Memphis Savings Bank as her administrator.

On August 14, 1912, possession of the real estate in controversy was surrendered to Crofford by the heirs.

The case came on for trial before his honor, H. W. Laughlin, one of the judges of the circuit court.

The court found the plea of no assets in favor of the administrator, also the tender made by Mrs. Deatherage as already mentioned, the execution of the bond

by Matthews, the surrender of the possession of the property on August 14th, and proceeded to adjudge as follows:

"And thereupon the court adjudged that the plaintiff [Crofford] is entitled to no judgment either against the said heirs or said bank [the administrator], but is entitled to a judgment for the value of the rent of said premises against W. D. Matthews the surety on the bond of *certiorari* and *supersedeas* of Mrs. W. C. Deatherage, now deceased, from September 1, 1911, up to August 14, 1912, at the rate of $150 per month, with interest at six per cent. on each month's rent from the first of that month to this date."

After ascertaining the whole amount, principal and interest, $1,849.54, the judgment proceeds:

"The court further orders that the clerk of the court at once pay the plaintiff, or his attorney, the $155.75 paid into court by deceased defendant on September 13, 1911, when she prayed for the writs of *certiorari* and *supersedeas*, and that this amount be credited on the amount of this judgment.

"Wherefore it is ordered that the plaintiff, T. J. Crofford, have and recover of the said W. D. Matthews, surety on said bond, and the said North Memphis Savings Bank, administrator of the said Mrs. W. C. Deatherage, deceased, $1,849.54, and the costs of the suit, less the $155.75 mentioned, making a total of $1,693.79, for which execution will issue."

Matthews prayed an appeal to the court of civil appeals, and that court reversed the judgment as to the administrator, holding that the entry of judgment against it was evidently an inadvertence, and corrected the entry so as to render judgment for the possession against the heirs, but directed no writ of possession, inasmuch as this feature of the judgment of that court was based on a decision of this court (*Spillman* v. *Walt*, 12 Heisk., 574), in which it was held that a judgment on a *certiorari* bond, executed under our statute in forcible entry and detainer cases, could only follow as an incident to a judgment for possession. With these emendations the judgment of the trial court against Matthews for the rent was affirmed.

At this point Matthews filed a petition in this court for the writ of *certiorari* and *supersedeas* to remove the cause here for trial, and errors have been assigned.

Only two errors are available, however, in this court under our rules, viz., those which were embraced in a motion for a new trial. These are as follows:

"(1) The court erred in rendering judgment because it is established by the evidence that on the 14th day of August, 1912, the land for the possession of which this suit was instituted was surrendered to the plaintiff, and he then entered into possession of said premises and demised same to other tenants, leaving nothing really for controversy or decision in the suit.

"(2) The court erred in entering judgment in the suit for the further reason that, at the time of suing

out the writ of *certiorari* and *supersedeas* as here-
in, the defendant, Mrs. M. C. Deatherage, with leave
of the court tendered and paid all the rent in arrears
for said premises, whereby the right of the plaintiff
to forfeit the said lease and end the term was extin-
guished and the forfeiture became extinct, leaving
nothing to be determined in this case.''

These assignments were repeated in the court of
civil appeals and are urged again in this court.

We think the first should be overruled. At the
time the surrender was made by the heirs of Mrs.
Deatherage the situation of the parties was as fol-
lows: Crofford had brought an action to enforce the
right of forfeiture secured to him in the lease, had
obtained a judgment for the possession in the court
of first instance, appellate proceedings had been in-
stituted by Mrs. Deatherage, and in doing this she
had been compelled, by the statute applicable to such
cases (Shan. Code, sec. 5111), to give bond for the
rents and the costs that might accrue during the con-
tinuance of the litigation. Pending the period be-
tween the filing of the *certiorari* petition on Septem-
ber 13, 1911, and the surrender of possession on the
14th of August, 1912, all of the rents had accrued
for which judgment was given, likewise a bill of court
costs. The surrender relieved Mrs. Deatherage, or
her estate, from any liability accruing subsequently
thereto, but not from any right which had accrued
to Crofford. *Hanaw* v. *Bailey*, 83 Mich., 24, 46 N. W.,
1039, 9 L. R. A., 801; *American Bonding Co.* v. *Pueblo*

*Investment Co.,* 150 Fed., 17, 80 C. C. A., 97, 9 L. R. A. (N. S.), 557, 10 Ann. Cas., 357 and note; *Boyd* v. *Gore,* 143 Wis., 531, 128 N. W., 68, 21 Ann. Cas., 1263. It is true that it was not essential, indeed it was wholly unnecessary, to enter a formal judgment for the possession after the surrender had taken place pending the suit; but it was the duty of the court to mold the judgment according to the facts; (Shan. Code, 4702), and there should have been a judgment entered reciting the facts, including the surrender pending the litigation, and declaring the plaintiff Crofford's right to the possession at the beginning of the action, and, as a consequence a recovery on the bond for the rents and costs. It is a mistake to suppose, as argued by defendant's counsel in effect, that the surrender could have a retroactive effect, and blot out all of plaintiff's previously acquired rights. It is true that the purpose of the suit was to recover the possession, and it may be well said, when the matter is considered in its narrowest aspect, that, the possession having been already obtained by consent of parties, it was idle to longer litigate to obtain it; that one cannot sue for what one already has. Still, the matter must be viewed in the larger light; that there was attached to the right of possession the right to receive unpaid rents and the costs, and these were not turned over when the possession of the real estate was surrendered. Nor did the surrender bind the surety on the *certiorari* bond. He could take advantage of it indeed, as to all subsequent rents,

but the principal could not, by making a surrender, determine against the surety the question whether the plaintiff was entitled to enforce the forfeiture, in so far as that concerned a judgment on the bond. The surety had the right to litigate that question for his own protection. After the surrender had been made, it had yet to be determined between the plaintiff and the surety at the beginning of the action.

The second assignment presents the point that the tender with the *certiorari* petition to the circuit court of an amount sufficient to pay the rent due September 1st, the interest thereon, and the costs accrued to the date of the petition, forced on Crofford the duty of acceptance, and destroyed his action for possession. It is insisted, in substance, that the maturity of each note, followed by failure to pay it, gave a separate right to forfeiture, but that the tenant could prevent this forfeiture in each instance by tendering the amount due each time, even after suit brought for possession; that it was the duty of the landlord, even pending the present suit, on the falling due of each note month by month, to declare a forfeiture for that, and so on to the end; and finally, that the surety on the *certiorari* bond became liable only for the amount of the first note, and not for all the rents that might accrue during the litigation, and that, inasmuch as the amount of this note and interest was tendered with the petition in the circuit court, there was no liability against him of any character.

Matthews v. Crofford.

The crucial question, as we think, is whether the forfeiture was made effective before the tender was made.

In this State we follow the old common-law rule that, in order to an effective forfeiture, the landlord must demand the rent on the day it is due, before sunset, and at the most public place on the land; that is to say, at the front door of the dwelling house of the tenant if there be such house on the land. *Parks v. Hays,* 92 Tenn., 161, 22 S. W., 3. But the necessity of such demand may be waived in the lease. Id. *Lewis v. Hughes,* 12 Colo., 208, 20 Pac., 621. There was such waiver in the present case. But the lease provides for a re-entry, and the authorities are that when such is the case a re-entry must be effected before the forfeiture can become operative. Taylor, Landlord and Tenant, secs. 288, 492, and note; *Guffy v. Hukill,* 34 W. Va., 49, 11 S. E., 754, 8 L. R. A., 759, 762, 26 Am. St. Rep., 901; *Crean v. McMahon,* 106 Md., 507, 68 Atl., 265, 14 L. R. A. (N. S.), 798, 804. Very many authorities hold that the entry by the landlord may be in person or by agent, and with such force as be necessary to expel the tenant, on expiration of the lease. *Allen v. Keily,* 17 R. I., 731, 24 Atl., 776, 33 Am. St. Rep., 905, 16 L. R. A., 798, and authorities cited in note; note to *Whitney v. Brown,* 11 L. R. A. (N. S.), 468. Quite a considerable number of other authorities are to the effect that the action of unlawful detainer is the legal substitute for personal entry. Same note, and authorities cited. *Wilson v.*

*Campbell*, 75 Kan., 159, 88 Pac., 548, 121 Am. St. Rep., 366, 12 Ann. Cas., 766, 8 L. R. A. (N. S.), 426, and notes; *Whitney* v. *Brown*, 75 Kan., 678, 90 Pac., 277, 12 Ann. Cas., 768, 11 L. R. A. (N. S.), 468 and note.

The reason underlying these cases is that the statutes on this subject, and on forcible entry and detainer, were designed to preserve the peace and good order of society, and to prevent the collisions that are so likely to follow invasions of real estate.

We have such statutes, and we are of the opinion that the line of cases last referred to state the safer and better rule. This was recognized in *Davidson* v. *Phillips*, 9 Yerg. (17 Tenn.), 93, 95, 96, 30 Am. Dec., 393. Indeed we believe that any other form of entry would violate the first section of the chapter of our Code covering the subjects of forcible entry and detainer, forcible detainer, and unlawful detainer. That section (5090) reads:

"No person shall enter upon or into any lands, tenements, or other possessions, and detain or hold the same, but where entry is given by law, and then only in a peaceable manner."

This mode of procedure seems also to have been in the minds of the parties to the lease, since the last sentence quoted indicates on whom process shall be served in case the tenant shall be absent when the forfeiture occurs.

Similarly it has been held that:

"Wherever the action of ejectment is in force, no actual entry by the landlord is necessary to enable

him to take advantage of a condition broken, because the constructive entry implied and confessed in the action is sufficient for the purpose, even where the estate to be avoided is one of freehold.'' Taylor's Landlord and Tenant, sec. 298, citing *Doe* v. *Masters,* 2 B. & C., 490; *Little* v. *Heaton,* 2 Lord Raymond, 750; *Bear* v. *Whisler,* 7 Watts (Pa.), 149; *Jackson* v. *Crysler,* 1 Johns. Cas. (N. Y.), 125; *Doe* v. *Alexander,* 2 M. & S., 525; *Garrett* v. *Scouten,* 3 Denio (N. Y.), 334.

We are of the opinion on the grounds stated that the service of process in the unlawful detainer suit operated as a constructive re-entry, and an actual re-entry by the landlord was unnecessary.

However, the tenant remained in the actual possession of the land pending the action, and was enabled to maintain that possession by virtue of the *supersedeas* bond allowed by the statute, under which the writ of *certiorari* was granted to remove the cause from the court of first instance to the circuit court.

But the burden of the statute must be so borne along with the enjoyment of its benefits. It requires that the defendant's bond must bind him and his surety for ''the value of the rent of the premises during the litigation.'' Shannon's Code, sec. 5111. So while it is true that after an actual entry by the landlord there can be no subsequent rents, the case is necessarily different in a case where the defendant is held in possession, as here, by virtue of a statute on the execution of a bond of the kind we have mentioned.

From what has been said, it is apparent that there could be no need for successive actions to enforce the forfeiture as each successive installment of rent fell due. When default was made on the note due September 1st, and action was brought the next day to enforce the forfeiture, that action covered the whole contract.

Nor is it true that the tender which was made with the filing of the petition for the writs of *certiorari* and *supersedeas* availed to destroy the forfeiture. We had occasion to consider a similar question in *B. W. Lee* v. *Security Bank & Trust Co.*, 124 Tenn., 582, 139 S. W., 690. We there said:

"The authorities are in conflict upon the effect of a tender made after default. In our opinion, the better view, supported by the latest cases, is that where a tender is made after default, but before the mortgagee has exercised his option, the mortgagee is bound to accept the money, and the acceleration will not take place. There are some authorities which hold that the mortgagee is bound to accept the money if tendered at any time before sale made, even after suit brought, if the tender of the money and interest due includes also the costs accrued. We do not think these authorities state the true rule, and decline to follow them. As we have said, the question is not whether the court will enforce a penalty, or forfeiture, since no such matter is involved, but whether it will recognize a contract which the parties have made, for advancing the day of payment upon a contingency

which they had provided for in terms agreed upon be-
tween them."

In that case we had under consideration the terms
of a mortgage or trust deed, which provided that on
failure of the debtor to pay any part of the indebted-
ness when due, all of the indebtedness, at the option
of the creditor, should become due without notice to
the debtor, and the trustees should enter and foreclose.
The same principle is recognized as to leases in *In-
surance Co.* v. *Diggs*, 8 Baxt. (67 Tenn.), 563, 569.

It is insisted that the court of civil appeals erred
in awarding judgment for the possession of the real
estate in controversy against the heirs at law of Mrs.
Deatherage. The ground of the objection is that the
trial court rendered no such judgment, and the plain-
tiff did not appeal from the judgment which was in
fact rendered, but only the defendant, the surety on
the *supersedeas* bond. Under our statutes leaseholds
are interests in land (Shannon's Code, sec. 51), and
as such descend to the heirs at law, and not to the per-
sonal representative, as chattels. Hence it was nec-
essary to have the heirs of Mrs. Deatherage before
the court, and they were, as already recited, brought
in, and the cause was revived against them. The ap-
peal of the surety brought up so much of the case
as was required for the court to properly determine
his rights, and therefore brought with it the plaintiff
and the defendants, the heirs at law. The trial judge,
in order to render a proper judgment against the
surety, was required, under *Spillman* v. *Walt*, supra,

to declare the right of possession.  Having failed to correctly frame the judgment, the court of civil appeals, on the case being brought before that tribunal, acted within their jurisdiction in ascertaining the right of possession when modifying and affirming the decision of the trial court.

The result is the judgment of the court of civil appeals, on the grounds herein stated, is affirmed.