## MRS. E. D. ROBERTS v. THOMAS H. SMART MOTOR CAR CO., et al.

Western Section.   November 12, 1926.

Petition for Certiorari denied February 26, 1927.

1. **Malicious prosecution. Existence of probable cause is a complete defense.**
    The existence of probable cause for the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of crime, is a complete defense to an action for malicious prosecution, although the person is innocent.

2. **Malicious prosecution. Evidence. Evidence held insufficient to establish a charge of malicious prosecution.**
    Where the defendant had brought an action in replevin against the plaintiff to recover an automobile which had been sold on the title retention

plan and the plaintiff had hidden the automobile and refused to tell the officers where it was, and the defendant then consulted his attorney in regard to his rights and was advised by the attorney that an action under the statute for secreting property sold on conditional sales contract would lie and he had therefore filed the action, **held** that the evidence showed probable cause to believe that the plaintiff was guilty of the crime and an action for malicious prosecution would not lie.

Appeal in Error from Circuit Court, Shelby County; Hon. H. W. Laughlin, Judge.

Affirmed.

Kelly & McClure, of Memphis, for plaintiff in error.

Ewing, King & King and H. P. Posert, of Memphis, for defendant in error.

OWEN, J.  At the last term of the court this cause was stricken from the docket for the reason the appeal was not perfected according to the conditions specified in the judgment granting an appeal. In other words, the plaintiff in error was allowed thirty days in which to perfect her appeal, by executing an appeal bond. It appeared that this entry was made November 19, 1925, and the appeal bond was not executed until some fifty-seven days after this entry. On June 12, 1926, which was within ten days after the cause was dismissed and stricken from the docket, the plaintiff filed a petition suggesting a diminution of the record and reciting that by oversight the clerk of the circuit court of Shelby county had written November 19, 1925 as the date on which the appeal was granted when the true date was December 19, 1925, as shown by the original record, and the petition prayed that the cause be reinstated. This petition was accompanied by the affidavit of the clerk and a true copy of the record showing that it was heard on December 19, 1925, instead of November 19, 1925. Counsel for defendant admit that the appeal was perfected in time and it was a clerical error in copying the transcript. For some reason unexplained, the record was not called to the attention of the court after the petition was filed to reinstate the case until the present term of this court. The motion to reinstate is sustained and the cause is redocketed and we will proceed to determine the same upon the merits of the appeal.

Plaintiff instituted a suit for malicious prosecution in the circuit Court of Shelby county on August 5, 1925, against the two defendants, the Thomas H. Smart Motor Car Company, a corporation, and Thomas H. Smart, individually. She alleged that she was maliciously and without probable cause arrested on a State's warrant issued by Frank W. Davis, Justice of the Peace of Shelby county on the 6th day of February, 1924; that plaintiff was carried before said Justice of the Peace by a deputy sheriff where she was

bound over to the criminal court of Shelby county; that she gave bond; that she was indicted by the grand jury of said county on the 2nd day of May, 1924; that she was tried in Division 1 of the criminal court of Shelby county and was acquitted, and that the prosecution was wholly ended. The declaration made the usual allegations of suffering, of great pain and mental anguish, humiliation, embarrassment, degradation, etc. The defendants filed a plea of not guilty. The cause was heard before Judge Laughlin and a jury at the November term, 1925, of the circuit court and at the conclusion of all the evidence the court sustained a motion for a directed verdict and dismissed plaintiff's suit. She filed a motion for a new trial on one ground;—that is, the court erred in granting the defendant's motion for peremptory instructions.

The plaintiff has assigned three errors in this court. The first error is, in substance, the same error as complained of in the motion for a new trial; the second error being that the court erred in failing and refusing to consider the notes which plaintiff testified about at the trial and which are marked Exhibits "A," "B," "C," "D," "E," "F," and "G," which plaintiff offered on her motion for new trial. The third assignment is "The court erred in holding as a matter of law plaintiff was hiding the car from defendants within the purview of the conditional sales statutes."

As to the second assignment of error, it appears that the notes sought to be introduced are not in the bill of exceptions, and they were not offered in evidence at the trial or on the motion for a new trial and the record shows that the court did not consider them in passing on the motion, and of course we cannot consider the same upon this appeal. Appellant will be confined to the alleged error upon which the motion for a new trial was predicated. Matthews v. Crofford, 129 Tenn., 541; and the rules of this court by Rule 11, Subsec. 4 as found in 151 Tenn., page 815.

There were but three witnesses examined in the lower court, Mike Cohen, the clerk of the criminal court, read the indictment against plaintiff and the verdict of the jury acquitting her. Mrs. Ed Roberts, the plaintiff testified, and Mr. Earl King, an attorney, and who advised the defendant Thomas H. Smart of the defendant corporation to have Mrs. Roberts arrested.

It appears that the plaintiff purchased an automobile from the Smart Motor Company, trading in a used car, paying some $200 cash, and executing a number of deferred monthly notes, each note being for $35. At the time she made the purchase from the defendants she executed a conditional sales contract, title to the Hupmobile being retained by the seller pending the payment of the deferred notes. Plaintiff testified that a few days before her note which matured January 1, 1924, was due she called at the

office of the defendant to negotiate for getting an extension of the January note. One Mr. Creath, who plaintiff testified she understood was the sales manager of the defendant company, agreed with her that she might take up the January note when she paid the February note. It appears that prior to February 1st, or about January 26, 1924, a man named W. F. Landrum filed a bill in the chancery court of Shelby county, asserting an interest in the automobile in question, and prayed for an attachment, which was issued. It appears that Landrum had been paying court to the plaintiff, had boarded in her home, had given her the first automobile that she owned (a Ford), which was designated as a Christmas gift. It appears that the Ford, by trade or exchange was converted into a Nash, and by process of exchanging automobiles, or the evolution of the automobile exchange business, where the mind desires a better and a higher priced car, the Nash was converted along with $200 of Landrum's money into the Hupmobile, which car was the cause of this litigation. Plaintiff testified that she learned Mr. Landrum who had represented himself to be a widower had a living wife in the State of Kentucky and her attitude towards Mr. Landrum evidently became cold and indifferent when she made this discovery. Mr. Landrum quit boarding in her home and started a lawsuit for the car. She testified that she visited the office of the defendant company about the time the Landrum lawsuit started and tried to pay her January and February notes by making a tender of $70; that Mr. Creath refused to take the $70, said that the notes were not in his hands, and referred her to someone else. She did not tender the interest due on the January note but Creath, so the plaintiff testifies, asked that the plaintiff return the automobile, which the plaintiff refused to do. Creath told the plaintiff that Mr. Smart was out of the city and that he and Mr. Earl King had had some conversation about the matter before Mr. Smart left the city; that Smart would be back in two or three days and that they would see the plaintiff then. A letter was introduced bearing date of January 14, 1924, calling on plaintiff for the car or the money due. The clerk in his transcript states that this copy of the letter from the defendant to plaintiff had been mislaid. Plaintiff denied receiving this letter. Part of the pleadings in the Lambuth suit are in the transcript, and part could not be located.

Plaintiff further testified that a deputy sheriff came to her home, tried to find the car, asked plaintiff where it was, that he had a writ of replevin, and that she refused to tell where the car was, telling him he would have to find it. We infer that the deputy made a report to the plaintiff in the replevin suit, the Smart Motor Company. Thereupon the plaintiff says that Mr. Earl King called her over the telephone and said: "Mrs. Roberts, I represent the

Thomas H. Smart Motor Company and I want to know why you haven't carried their car over there" and she stated she replied "I don't owe them anything and I don't see why they have any claim on the car," that Mr. King then said "Yes, I know you and your kind, you are just a crook, only a little bit stronger language," that he then said "I know how to deal with you, I will have you arrested and locked up." "Mr. King, I am sorry you feel that way but I have done the very best I know how and everything I owe you people I feel that I have paid, and he started talking and I hung up."

Mr. Earl King testified that Mr. Smart called to see him as an attorney and told him, the witness, that Mrs. Roberts was behind in her payments and that after several visits by Smart the witness advised him (Smart) to sue out a writ of replevin and regain possession of the car and post his advertisement as he had done many times before, and then proceed to sell the car. The next day witness learned of the attachment suit having been brought by Landrum against Mrs. Roberts. The witness proceeded to the court house and got the papers in the Landrum suit and in the bill Landrum claimed the car, saying that he had made all the payments on the car and that the car was really his. Later Smart told the witness (Mr. King) that he (Smart) had sued out a writ of replevin through the court of F. W. Davis, Justice of the Peace, and that the writ of replevin was being handled by a deputy sheriff, Mr. Turner Plunkett, and that Plunkett had reported that the car was not in Memphis but in Mississippi, and that Mrs. Roberts was not going to tell where it was. The witness also talked to Creath and Creath told witness that Mrs. Roberts had told him, Creath, that she was not going to be deprived of the use of her car. None of this testimony was excepted to. The witness said "thereupon I said to Mr. Smart, 'there is no use in getting the woman in trouble' but that he should have his property." The witness said "I will see if I can't do something," and he called Mrs. Roberts over the telephone, telling her that he represented the Smart Motor Company and Mr. Smart, and they had been to see him (witness) about her car; that they reported that she had been hiding the car and that the deputy sheriff could not find the car so as to execute the writ of replevin. The witness said "I tried to explain to her it might mean some trouble to her and the best thing to do if she saw fit was to surrender the car and that she could have her rights protected at law; that thereupon she said, 'I know you d—n lawyers, and I am not going to tell you anything,' and I said 'all right, madam, we will have to protect ourselves the best we can.' " The witness further testified that after that he advised Smart that the hiding out of the car was a violation of the law and that

Smart had a right to sue out a warrant for her arrest and to have her arrested.

It appears that the car was found the latter part of April, or within less than a week before the plaintiff was tried on the crim- inal charge in the criminal court and acquitted. Plaintiff admits that a deputy sheriff came to her home almost every day looking for the car but she refused to tell him where it was; that several deputies came to her house, she didn't remember who they were. She testified that she got so she was afraid to go to the door for fear there was a deputy sheriff there.

The statute in regard to concealing property in which there is title retained is as follows:

"If the purchaser of personal property, under a written or printed contract of conditional sale, when the title remains in the seller, until that part of the consideration remaining unpaid is paid, shall, without having paid for the same, and without the con- sent of the seller, sell, give away, or otherwise dispose of or con- ceal such personal property, with the intention of depriving the seller of such property, or of its proceeds so that said seller cannot, by due process of law recover possession of said property, when so entitled under the terms of his said contract of conditional sale, said purchaser shall be guilty of a misdemeanor, and, upon con- viction, shall not be confined in the county jail for a period of not more than six months, or shall be fined not less than fifty dollars, or both." Sec. 3607a2, Shan. Anno. Code.

The existence of probable cause which is the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of crime is a complete de- fense, although the person is innocent. Woolworth v. Conners, 142 Tenn., 678.

The undisputed facts show that the defendants in the instant case undertook to obtain possession by replevin of an automobile from the plaintiff. They sought to enforce their rights by legal proceedings. The plaintiff refused to tell the deputy sheriff where the automobile was. While she testified that at the time the sheriff was trying to find same, that the car was not in Memphis, she ad- mits that during part of the time he was trying to find it and at the time it was found that it was in the State of Mississippi.

Plaintiff's contention is that Creath, whom she understood was the sales manager, had extended the time for her payment to Feb- ruary 1st. On the other hand she admits prior to the issuance of the replevin writ that Creath said that he had no control of the notes and insisted on her returning the car to the Motor Company. Furthermore, while plaintiff testified she had offered to pay both notes, or $70, and that Creath refused it she did not offer to pay

the accrued interest on the said notes, and this would not be a legal tender.

The undisputed facts show that this plaintiff was in default; that the writ of replevin was properly issued; that she was concealing the property sought to be replevied by her own admission. The defendant properly appealed to learned counsel for advice. He was advised as to what his rights were, and he proceeded according to law. We are of opinion that under all the facts, taking them in their most favorable view as it is our duty to do, that the judgment for a directed verdict was properly sustained. It results that the assignments of error are overruled and disallowed and the judgment of the lower court affirmed. The defendant will recover of the plaintiff and her surety on appeal bond all of the cost of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.