## J. GUTMAN v. MRS. LONNIE KAYLOR, et al.

Eastern Section.   September 3, 1927.

Petition for Certiorari denied by Supreme Court, January 28, 1928.

H. T. Campbell, of Bristol, for Mrs. Kaylor.
St. John & Gore, of Bristol, for Goebel & Lynch.
Burrow & Burrow, of Bristol, for appellee.

THOMPSON, J. Mrs. Lonnie Kaylor owned a lot or parcel of land on Fifth street in Bristol, Tennessee, on which was situated a building known originally as the Bristol Theatre, including an annex, out buildings and appurtenances, in which a moving picture show was operated. On November 8, 1922, she leased this property to J. Gutman for a period of five years with the privilege of renewing for another period of five years—the material provisions of said lease being:

"That for the consideration and upon the terms and conditions hereinafter set out, the lessor does by these presents lease and demise unto the lessee all that certain lot or parcel of land, together with the

building thereon known as the Bristol Theatre, including its annex, outbuildings and appurtenances, located on Fifth street, in Bristol, Tennessee, and being the same property purchased from R. L. Blevins.

"1. Said lease is for a period of five (5) years from this date, with the privilege of a renewal for five additional years at the same price and upon the same terms. But in the event of such renewal, the party of the first part shall be given written notice of such intention to renew, before the expiration of the first five-year period.

"2. The consideration for this lease is the sum of two hundred and fifty dollars ($2500) per month, payable monthly in advance, on or before the eighth of each month; and as a further consideration for said lease the party of the first part shall receive a royalty of five per cent (5%) on the net profits derived from said Bristol Theatre. The party of the first part shall have a written statement at least once every six months showing such net profits, at which time any royalty shown to be earned shall be paid.

"5. The party of the second part, or lessee, shall have the right to sublease any or all of this building, without restrictions (except that said Theatre auditorium shall not be sublet to colored people, or any part of said property used for the sale of intoxicating liquids) and shall have the right to make any changes desired; but with the understanding that at the expiration of this lease, or renewal thereof, the building and property shall be left in as good condition as when received, reasonable wear and tear excepted.

"6. It is agreed that should said building be damaged by fire at any time during this lease, so as to become untenantable, the said rent shall cease during such period.

"11. The lessor covenants that upon the lessee's paying the rent as agreed and carrying out the covenants herein contained on his part, he shall have free and uninterrupted possession of the premises during the term of this lease, or renewal; and the lessee on his part covenants to pay the rent as agreed, and carry out the covenants herein made by him.

"12. Should default be made by the party of the second part in the payment of said rent as agreed, or upon his failure to carry out any covenant on his part, then the lessor shall have the right to cancel this lease and take possession of said premises. 60 (sixty) days of grace allowed."

Upon the execution of this lease Gutman went into possession of the property and operated a motion picture show in it, known as the "Columbia." For some reason the parties by consent or acquiescence fixed upon the twentieth of the month, instead of the eighth, as the day for the monthly payments of the rent, and even after this had been done Gutman frequently and almost constantly

was late in his payments; that is, he paid after the twentieth. This brought several protests from Mrs. Kaylor but she continued to accept the rent checks, and did not give Gutman notice that if he did not begin paying promptly she would declare the lease at an end and repossess herself of the property. He furnished her with no statements showing the results of the business; that is, the amounts received and expended and the resultant profits or losses.

Gutman had a manager by the name of Garner whom he discharged in April, 1925. On April 25, 1925, Garner went to work for C. A. Goebel, who was himself engaged in the motion picture show business at Bristol. A few days prior to May 19, 1925, Garner went to Appalachia, Virginia, where Mrs. Kaylor resided, and told her that he could rent her property for $300 per month. On May 19, 1925, Mrs. Kaylor went to Bristol, and being unable to get in touch with Gutman who was out of the city, she had a conference with Goebel and his attorney, Mr. Davis, and it was agreed that if she could get rid of the Gutman lease she would lease the property to Goebel for $300 per month, and he gave her a written statement to that effect. Davis then prepared for her a letter which she mailed to Gutman by registered mail (upon her return to Appalachia) either that afternoon of the next morning. Said letter was as follows:

"Appalachia, Virginia.
"May 19, 1925.

"Mr. J. Gutman,
"Bristol, Tennessee.
"Dear Sir:—

"You are in arrears in your monthly payments on rent and in addition thereto have never made settlement of royalties as provided for in your contract, and under the terms and conditions thereof for this failure on your part I have the right to declare your lease cancelled, and this is to notify you that the same is now declared cancelled by me, you to have sixty days grace within which to vacate said premises. You will therefore please vacate not later than July 18, 1925, pay your rent to that date and deliver to me possession of said premises.

"Yours very truly,"

At the time said letter was written, i. e., May 19, 1925, Gutman was behind with his rent checks more than thirty days but less than sixty days, counting the twentieth of the month as pay day.

On June 20, 1925, Gutman sold and assigned the lease to C. A. Goebel and Eugene Lynch upon the following material terms and conditions:

"First: That second parties agree to assume the payment of the rent under said lease, to-wit: $250 per month, to Lonnie Kaylor direct according to the terms of said lease.

"Second: In addition to the rental paid above the second parties agree and bind themselves to pay to the first party the sum of $275, payable monthly in advance on the twentieth day of each month during the life of this lease and the renewal thereof. Default in the payment of any monthly installment of $275 aforesaid shall constitute a default under said lease for which the first party may reenter and take the premises without process of law.

"Fifth: It is hereby expressly understood that this sublease or assignment is made subject to all the terms and conditions of the first party's lease with Lonnie Kaylor and also subject to the sublease of the Beauty Parlor, the second parties taking the rent therefor."

On the same day, i. e., June 20, 1925, Gutman wrote Mrs. Kaylor and notified her that he exercised his option to renew his lease for an additional five years, or until November 8, 1932, and on July 1, 1925, he wrote her that he had assigned his lease to Goebel and Lynch. Said letter of July 1, 1925, stated as follows:

"You no doubt wonder why you did not receive any bonus from the profit that I was to make, the enclosed statement is self-explanatory. I had a public accountant to audit my books so he could certify to the enclosed statement. If however you are not satisfied my books are open for your inspection. I transferred my business to C. A. Goebel and Eugene Lynch. Hope they will make a better success with the Columbia than I did."

Upon the execution of the assignment or sublease Goebel and Lynch went into possession, and shortly thereafter they paid Gutman one month's rent or bonus, i. e., $275. Then Lynch transferred his interest to Goebel, and on July 18, 1925 (Gutman in the meantime having paid her up to July 20, 1925) Goebel enclosed to Mrs. Kaylor a check for $250, with a letter stating that the check covered rent under the Gutman lease to August 20, 1925. Mrs. Kaylor, however, declined to accept the check and held it until July 21, 1925, on which date she leased the property direct to Goebel for $300 per month, for a period of five years and with the privilege of renewing for another five years. Goebel then began paying her $300 per month, and refused to make any further payments to Gutman.

On August 12, 1925, Gutman's attorney, Mr. Warren, wrote Mrs. Kaylor, as follows:

"I am writing to say to you that Mr. Gutman is now ready and has been ready all along to comply with his contract on the lease of Columbia Theatre, in spite of the fact that you have refused to accept your rent. Mr. Goebel mailed you a check you held for several weeks and then returned to him, stating that you would not accept any rent either from Goebel or Gutman. You will recall that you told me you had this check when I was in your home at Appalachia

two weeks ago, and that you would not receive any more rent from Mr. Goebel or Mr. Gutman, unless you were allowed to make a contract direct to Goebel. I will forward you certified check for your rent to date, anytime that you desire that you want to go forward under the terms of your lease, but it is useless to be sending you the rent and having you return it.

"I shall appreciate an immediate reply as to what your intentions are."

What reply, if any, Mrs. Kaylor wrote to this letter does not appear, but as has been stated, Goebel paid her at the rate of $300 per month under his lease from her, and refused to pay Gutman anything after the first month.

On August 28, 1925, Gutman filed the original bill in this cause against Mrs. Kaylor and Goebel and Lynch, the principal prayer for relief being:

"That the said Mrs. Lonnie Kaylor be enjoined and prohibited from leasing, selling, mortgaging, renting or otherwise encumbering or interfering with the complainant's possession of the premises herein concerned; and that complainant's original lease with the defendant, Mrs. Lonnie Kaylor, may, by the court be declared and established as a valid lease, and that the defendant, Mrs. Lonnie Kaylor, may be required to carry out the same according to its terms or answer in damages, for her refusal to do so.

"That the said defendants, C. A. Goebel and Eugene Lynch may, by a proper decree of this court, be required to carry out the terms of their sublease with complainant and to pay their rental as provided therein, or that a judgment or decree for a lump sum, representing the amount of rent covered by the term of their lease may be given against them."

Mrs. Kaylor filed an answer and cross-bill taking the position that her lease to Gutman had been legally terminated by her action as hereinbefore set out on account of Gutman's failure to pay the rent promptly and his being in arrears, and on account of his failure to render her statements and make settlement of profits every six months; and further, that her lease to Goebel was regular and valid. By her cross-bill she prayed an accounting of the profits, and "that cross complainant recover of cross defendant, J. Gutman, a judgment for five per cent of such net earnings as may appear to have resulted from his operation of the Theatre under his said lease for the time operated prior to cancellation of same by cross complainant, and that the lease to Gutman be declared cancelled from date of said notice."

Gutman answered this cross-bill and averred that he made no profits and that for this reason he furnished Mrs. Kaylor with no statements, and that he was slow on some occasions in paying his rent

but that Mrs. Kaylor always accepted it, when he paid it to her. He denied that there ever was a time when she had the right to cancel or declare forfeited his lease, and alleged that if there ever was such a time, she waived her rights, etc.

Goebel and Lynch filed an answer to the original bill and averred that they were in no way responsible for Mrs. Kaylor's cancellation of her lease to Gutman, but they took the position that her cancellation was legal and valid. They averred their willingness to carry out the terms of their sublease from complainant, provided he was able to establish the legality of the same. During the pendency of the suit and by agreement of parties, Goebel paid to Mrs. Kaylor the sum of $250, each month.

Upon the final hearing the Chancellor decreed as follows:

That the lease (with renewal for five additional years) from Mrs. Kaylor to Gutman had not been legally and validly cancelled or terminated, and was therefore still in force and valid and binding upon the parties; that the lease from Mrs. Kaylor to Goebel (because of the outstanding lease to Gutman, and because Goebel having gone into possession under the sublease from Gutman could not therefore deny Gutman's title, etc.) was invalid and void; and that the sublease from Gutman to Goebel and Lynch (which does not expire until November 8, 1932, and which binds them to pay $250 per month to Mrs. Kaylor, and $275 per month to Gutman) is valid and binding. The decree then provided:

"It appearing that defendants Goebel and Lynch have paid complainant, Gutman, one month's rent, at the price of $275 per month, which pays the rent under said lease to July 20, 1925, the last named date will be the time for the commencement of the payment of rent by defendants, Goebel and Lynch, to complainant, Gutman, under the latter's sublease to them. It appearing that defendants, C. A. Goebel and Eugene Lynch have been in possession of the Columbia Theatre under their lease from complainant Gutman without paying any rent to him since July 20, 1925, up to February 20, 1926, the date of this decree, it is adjudged and decreed that complainant Gutman recover of said defendants, Goebel and Lynch, nineteen months' rent at $275 per month, making the sum of $5225, and interest on each month's rent from the time it was due, the total interest on said nineteen rental amounts being the sum of $247.15, making the total amount for which decree is hereby given the sum of five thousand, four hundred and seventy-two dollars and fifteen cents ($5472.15), as of date February 20, 1927, for which execution is awarded.

"A reference is decreed in favor of Mrs. Lonnie Kaylor, under her cross-bill to ascertain what damage, if any, she has suffered by reason of complainant, Gutman's, failure to pay her five per cent of the

net profits, if there were net profits, on his lease of the Columbia Theatre; but said reference will not operate to delay the appeal to the Court of Appeals by any of the parties at this time.

"It is further adjudged and decreed that this cause will be retained on the docket of this court in order that decrees may be rendered for any monthly payments that may not be paid when due, and for which decree has not been pronounced herein.

"It further appearing to the court that under the lease of the defendant, Mrs. Lonnie Kaylor to complainant, Gutman, that she was to receive a bonus of 5% (five per cent) on the net profits of Gutman, from the earnings of the Theatre in question, and it appearing that Gutman is receiving the sum of $275 per month as net profits by means of his lease to Goebel and Lynch. It is, therefore, considered by the court that 5% (five per cent) of said net profits to Gutman of $275 per month be paid Mrs. Kaylor, under her cross-bill, by the defendants, Goebel and Lynch, and deducted by them from the rental of $275 per month, payable to Gutman, under this decree, the court being of opinion that Mrs. Kaylor is entitled to 5% (five per cent) of the net profits earned by complainant, Gutman, growing out of the Columbia Theatre, under the leases in question."

Very soon after this decree was entered a stipulation of counsel for all parties was entered, as follows:

"In this cause it is stipulated by counsel for parties, that since the chancery court has ordered a reference for proof and report on the question of profits earned by J. Gutman up to the time of his alleged sublease to Goebel and Lynch, dated June 20, 1925, that the court may not now consider any proof with reference to such profits.

"And for this reason it is further stipulated that the depositions of the auditors, together with the exhibits thereto, which relate to this question of profits, shall not be copied in the transcript."

From so much and such parts of the decree as the parties considered unfavorable to them they have appealed to this court or filed the record for writ of error, and have assigned errors.

We will first consider the assignments of error filed in behalf of Mrs. Kaylor and questioning the action of the Chancellor in upholding her lease to Gutman notwithstanding Gutman's getting behind with his rent, his failure to furnish statements of income and expenditures, etc., and Mrs. Kaylor's letter of May 19, 1925, cancelling the lease.

We think Gutman's argument that the words: "Sixty (60) days of grace allowed," should be construed to mean that it was permissible for him to delay payment of rent as much as sixty days without entitling Mrs. Kaylor to cancel the lease and take possession of the property, etc., is plausible, and was probably what the parties intended. We also think Gutman's contention that Mrs. Kaylor, by

continually accepting past due rents, and by not protesting for two years and a half about his failure to furnish financial statements, waived her right to cancel without first notifying him of her intention to do so if he continued in default, is probably well taken. We also notice that the lease provided that: "The party of the first part shall have a written statement at least once every six months showing such net profits at which time any royalty shown to be earned shall be paid;" whereas, her letter of May 19, 1925, simply stated: "and in addition thereto have never made settlement of royalties as provided for in your contract," and he denied that he made any profit and she in a way admitted this to be true by agreeing that the court should not consider any proof with reference to profits prior to June 20, 1925. We also notice that the Chancellor said:

"But it will be noticed that Mrs. Kaylor did not give as one of the reasons for cancelling the lease, the failure of the lessee to make and submit to her semiannual statements, but she gave as a reason, his failure to 'make settlement of royalties.' The distinction is clear, that Mrs. Kaylor had no right to cancel the lease for failure to settle royalties, unless it be first shown that there were royalties. She would have been within her rights, to have assigned the failure of the lessee to make statements, as a reason for cancelling, but this she did not do. So that it results that Mrs. Kaylor may only rely on the failure of Gutman to pay rent promptly, as a ground for her action."

But assuming that Mrs. Kaylor waived none of her rights and that Gutman was in default in the payment of rent and in the furnishing of semiannual statements, it would not follow that the lease was cancelled and terminated by Mrs. Kaylor's letter of May 19, 1925, because she neither got possession of the property nor filed a suit for unlawful detainer, etc., one or the other of which was necessary to terminate the lease. Mathews v. Crofford, 129 Tenn., 552, 167 S. W., 695; Ins. Co. v. Diggs, 67 Tenn., 568; Allen v. Dent, 4 Lea, 677; Parks v. Hays, 92 Tenn., 162, 22 S. W., 3.

So we think the Chancellor was correct in holding that the lease remained in full force and effect notwithstanding said letter of May 19, 1925.

Neither do we think Mrs. Kaylor was entitled to a forfeiture or termination of her lease to Gutman under the prayer of her cross-bill that said lease be declared cancelled from the date of said letter of May 19, 1921. She did not pray for the possession of said property, but even had she done so, we do not think she would have been entitled to it. In her letter of May 19, 1925, she directed Gutman to pay rent to July 18, 1925. He paid her to July 20, 1925, and on July 18, 1925, Goebel sent her a check for $250, covering rent under Gutman's lease to August 20, 1925, which check however she declined

to accept. And on August 12, 1925, Mr. Gutman's attorney, Mr. Warren, wrote her and offered to pay rent whenever she would accept or receive it. So that Gutman was not in default in so far as the payment of rent was concerned when he filed his bill on August 28, 1925, and after that by agreement of the parties Goebel paid her $250 each month.

Insofar as the financial statements were concerned Gutman sent her a complete one on July 1, 1925, showing that he had made no profits. He testified that he had made no profits, and her attorneys agreed (as has been stated) that the court should not consider any proof with reference to profits prior to June 20, 1925—the date of the sublease from Gutman to Goebel and Lynch.

In view of the foregoing the assignments of error on behalf of Mrs. Kaylor will be overruled and disallowed.

In behalf of Goebel and Lynch it is assigned that the Chancellor erred in holding that the sublease of June 20, 1925, from Gutman to them was valid and binding, and in giving judgment against them for the rents due thereunder. The assignment is based upon the proposition that Gutman's lease from Mrs. Kaylor was terminated, and what has already been said disposes of it. But in addition thereto, it seems to us that Goebel and Lynch having gone into possession of the property under their sublease from Gutman, and not having surrendered possession of the property to him, they are not in position to dispute his right to collect rent from them. Caldwell v. Harris, 4 Humph., 25; Wood v. Turner, 7 Humph., 519.

The assignments of error in behalf of Goebel and Lynch will, therefore, be overruled and disallowed.

The first assignment of error on behalf of Gutman is as follows:

"The Chancellor erred, after decreeing that Mrs. Lonnie Kaylor was entitled to five per cent of the $275, to be paid each month to J. Gutman, in not decreeing that such amount should be a primary obligation of Goebel and Lynch, who, in their lease from Gutman, assumed and agreed to carry out the latter's lease from Mrs. Kaylor."

It will be seen that this assignment does not challenge the action of the Chancellor in holding that Mrs. Kaylor was entitled to five per cent of the monthly $275, but only makes the question that as between Gutman and Goebel and Lynch, the latter should have it to pay. The material provisions of the sublease are:

"First: That second parties agree to assume the payment of the rent under said lease, to-wit: $250 per month, to Lonnie Kaylor direct according to the terms of said lease.

"Second: In addition to the rental paid above the second parties agree and bind themselves to pay to the first party the sum of $275 payable monthly in advance on the 20th day of each month during

the life of this lease and the renewal thereof. Default in the payment of any monthly installment of $275 aforesaid shall constitute a default under said lease for which the first party may reenter and retake the premises without process of law.

"Fifth: It is hereby expressly understood that this sublease or assignment is made subject to all the terms and conditions of the first party's lease with Lonnie Kaylor and also subject to the sublease of the Beauty Parlor, the second parties taking the rent therefor."

Goebel testified as follows:

"Q. You did assume in your contract with Gutman to pay this five per cent provided for in Gutman's contract with Mrs. Kaylor, if you made any profits? A. Yes, if there were any profits."

And we think it manifest from the record that neither Gutman nor Goebel and Lynch ever contemplated that the latter were to pay five per cent on the $275 profit which Gutman was to make out of the sublease. It is clear, and the wording of the original lease makes it more so, that all that any of them ever contemplated that Goebel and Lynch were to pay in the way of a per cent on profits was five per cent on the profits derived by them from the operation of the theatre. So regardless of the fact that the Chancellor may or may not have been in error in holding that Mrs. Kaylor was entitled to recover five per cent on the $275 (a question not raised by the assignment of error) he did not err in holding that it was not a primary obligation against Goebel and Lynch, and the assignment will therefore be overruled.

The only other assignment on behalf of Gutman is that: "the Chancellor erred in not giving a decree for the full amount of the profit to complainant, Gutman, during the entire period of the lease, ending in 1932."

The sublease was really a sale or an assignment of the original lease to Gutman and was expressly made subject to all of its terms and conditions, one of which was that: "It is agreed that should said building be damaged by fire at any time during this lease, so as to become untenable the said rent shall cease during such period." Moreover, Gutman having in effect covenanted to keep Goebel and Lynch in possession, which he still may not do, and the Chancellor having declared the sublease binding for Gutman's benefit, it is clear that this assignment is not well taken and the same is overruled.

There is one other question in the case as follows:

As a part of the sublease Gutman sold certain equipment (including a "Unit Orchestra") to Goebel and Lynch with warranty of title. On the same day that the final decree was entered on the minutes, i. e., on April 14, 1927, Goebel and Lynch filed a petition in the cause setting out that Goebel owed the Rudolph Wurlitzer Com-

pany $1750 and interest on the purchase price of said "Unit Orchestra" for which said company held a title retention note, and that said company had filed a bill in the Corporation Court of Bristol against them and Gutman to enforce the payment of said indebtedness, etc. The prayer of the petition was: "That in any decree entered by your Honor in this cause that their rights be protected with reference to said claim now being made on account of said unit orchestra, and that should a final decree be rendered against them in the upper court, said judgment be credited with said claim of $1750 and interest."

Exhibits were filed with this petition but no proof was introduced in support of it. But the final decree provided with reference to it as follows:

"And by agreement of parties, by their solicitors, it is ordered that in any payment to Gutman by petitioners under the decree in this cause, enough money be withheld to protect said petitioners on such part of said claim as they may show to be a valid lien against said Unit Orchestra equipment."

Goebel and Lynch now contend in this court that Gutman was guilty of a fraud in representing to them that there was no lien on said equipment, and that said sale to them being a part of the sublease (which they say was indivisible) voided it. In the first place there is no proof to sustain the allegations of their petition, but even if there were we do not think it would render their entire sublease void. It seems to us that the above-quoted provision of the decree amply protects them and is all that they were entitled to.

It results that in our opinion there was no error in the decree of the lower court and the same will be affirmed and the cause remanded for the purpose of carrying said decree into effect. The costs of the lower court will remain as there adjudged. The costs of Mrs. Kaylor's appeal will be taxed against her. The costs of the appeal of Goebel and Lynch will be taxed against them. The costs incident to the filing of the record by Gutman for writ of error will be taxed against him.

Portrum and Snodgrass, JJ., concur.