IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2002 Session

## HILLSBORO PLAZA v. H. T. POPE ENTERPRISES, INC., ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 00-1382-II     Carol McCoy, Chancellor**

_____

**No. M2001-02943-COA-R3-CV - Filed November 15, 2002**

_____

This cause of action involves damages resulting from the breach of a commercial lease agreement. The trial court awarded judgment to the landlord, including forfeiture damages, prejudgment interest and attorney's fees. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;**
**Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY K. LILLARD, J., joined.

Donald Capparella, Brentwood, Tennessee, for the appellants, H. T. Pope Enterprises Inc., Hilda S. Pope and Terry W. Pope.

David S. Zinn, Brentwood, Tennessee, for the appellee, Hillsboro Plaza.

**OPINION**

The facts giving rise to this cause of action are undisputed. In August of 1994, H. T. Pope Enterprises, Inc. and Hillsboro Plaza entered into a three (3) year lease agreement for space in a shopping center in the Green Hills area beginning August 1, 1994. The lease was signed by Hilda S. Pope, as president of H. T. Pope Enterprises, and by Ms. Pope and her husband, Terry W. Pope, individually, as guarantors (H. T. Pope Enterprises, Inc., and Mr. and Ms. Pope collectively will be referred to as "Popes"). Mr. and Ms. Pope guaranteed all obligations under the lease jointly and severally for a sum not to exceed forty-five thousand, seven hundred, fifty dollars ($45,750). The lease included an Option to Extend, which Popes exercised to extend the term of the lease until July 31, 2000. Popes paid a security deposit of $4,000.

By the terms of the 1994 lease, the minimum base rental was payable on the first day of each calendar month. By November of 1998, the parties had begun to dispute their rights and obligations under the lease, including the due date and manner of payment of the rent. They accordingly

executed a "Settlement Agreement and Lease Addendum" ("addendum") on November 11, 1998, which provided, in pertinent part:

> 5. Tenant agrees to pay all future rentals due under the Lease Agreement by cashier's check sent by regular or certified mail not later than the 10th day of each month. If the Tenant should fail to so pay the rent in such fashion on a timely basis, Tenant and/or Guarantors hereby grant to the Landlord the right to automatically terminate the Lease Agreement without prior notice of any kind and agree to surrender immediate possession of the premises to Landlord in such event. In the event of such termination, Landlord would retain all rights and remedies available to it by law or under the Lease Agreement as a result of any such default and termination of the Lease Agreement.
>
> 6. Notwithstanding the provisions of Paragraph 5, Landlord, Tenant and Guarantors agree that upon termination of the Lease Agreement for any reason, whether by default, expiration, or mutual agreement, Tenant may obtain an additional sixty (60) day period of time in which to occupy the premises upon payment of two (2) months' rent in advance by cashier's check. At the expiration of any such sixty (60) day period, Tenant and/or Guarantors agree that Landlord would be entitled to immediate possession of the premises without prior notice, and in such event the Landlord would also retain all rights and remedies available to it by law or under the lease Agreement, as a result of any default under the Lease Agreement by Tenant and/or Guarantors.
>
> Except as expressly modified by the terms of this Agreement, the parties do hereby ratify and reconfirm all of the other provisions of the Lease Agreement dated August 4, 1994, as subsequently amended by the Addendum dated August 10, 1994.[1]

Popes defaulted by mailing the rent payment of $4,104.49 for August of 1999 one day late. The cashier's check for the August rent was purchased and mailed by Popes by certified mail on August 11, 1999. It was received by Hillsboro Plaza on August 12, 1999. On August 17, 1999, counsel for Hillsboro Plaza advised Popes by letter that they had failed to comply with the payment provisions, and that Hillsboro Plaza was terminating the lease as a result of the late payment. Hillsboro Plaza requested immediate possession pursuant to paragraph 5 of the addendum, and advised Popes that it retained "all rights and remedies available to it by law or under the Lease Agreement as a result of [their] default." Hillsboro Plaza further advised Popes of their right to remain in possession for sixty (60) days upon prepayment of rent by cashier's check. Hillsboro Plaza deposited Popes' cashier's check on August 24. Hillsboro Plaza did not take immediate possession, and the parties orally agreed that Popes could remain on the premises through January of 2000 on a month-to-month basis. It is undisputed that Popes vacated the premises before January 31, 2000, although the parties dispute responsibility for removing improvements made to the premises. On

---

[1] The August 10, 1994, addendum is not relevant to issues on appeal here.

January 22, 2000, Hillsboro Plaza entered a lease agreement for the premises with a subsequent tenant. The new tenant took possession in February of 2000. Pursuant to the rental agreement, the new tenant began paying rent sixty (60) days later, on April 4, 2000.

On April 13, 2000, Hillsboro Plaza sent Popes a bill for $26,602.98. This bill included, *inter alia*, rent for January through April 4, 2000, in the amount of $13,209.68; charges of $7,795.16 for removing improvements and repair; $6,750 for a real estate commission. The total amount of the charges were offset by the $4,000 security deposit paid by Popes when the lease was executed. Popes denied responsibility for these charges and on May 3, 2000, Hillsboro Plaza filed suit against Popes alleging breach of the Lease and Settlement Agreement.

The trial court entered judgment for Hillsboro Plaza in the amount of $24,789.68. The court further awarded Hillsboro Plaza its attorneys' fees and expenses in the amount of $12,152.05, and prejudgment interest in the amount of $4,297.07. Popes now appeal.

### *Issues*

Popes raise the following issues for review by this Court:

(1) Whether the trial court erred by allowing Landlord Weakley to forfeit the Lease for the tenant Pope's breach of paying the August 1999 rent just one day late?

(2) Whether the Landlord Weakley waived his right to forfeit the Lease when he persuaded the tenant Pope to remain on the premises for five months after the notice of termination?

(3) Whether Weakley is entitled to attorney's fees where [the lease provides for such fees only under] circumstances not present [here]?

(4) Whether the trial court abused its discretion in granting Weakley prejudgment interest?

### *Standard of Review*

This appeal requires us to interpret the lease agreement and addendum, which together constitute the contract between these parties. When called upon to construe a contract, the court must consider the various provisions of the contract together, seeking to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language they employed. *Guiliano v. Cleo*, *Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The interpretation of a contract is a matter of law. *Id.* We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). The trial court's findings of fact, however, are afforded a presumption of correctness upon appeal. Tenn. R. App. P. 13(d).

*Forfeiture of the Lease*

Popes do not dispute that late payment of rent constituted a breach of the lease as modified by the addendum. They contend, however, that Hillsboro Plaza's remedy for the breach is termination of the lease and repossession, not forfeiture damages. They cite an Arizona Supreme Court case, ***Foundation Development Corp. v. Loehmann's Inc.***, 788 P.2d 1189 (Ariz. 1990), for the proposition that payment of the rent just one day late constitutes a trivial breach for which forfeiture of the lease is too harsh a remedy. Popes further cite ***Hasden v. McGinnis***, 387 S.W.2d 631 (Tenn. Ct. App. 1964), ***Hooton v. Nacarato GMC Truck, Inc.***, 772 S.W.2d 41 (Tenn. Ct. App. 1989), and ***Southern Region Industrial Realty v. Chattanooga Warehouse & Cold Storage Co.***, 612 S.W.2d 162 (Tenn. Ct. App. 1980), for the proposition that the courts of this State join the majority of jurisdictions in holding that a trivial breach of a commercial lease should not result in a forfeiture. We agree with Popes that forfeiture of commercial leases are not favored. However, in light of the facts of this case, and most notably the lease addendum, the cases cited by Popes are distinguishable from the case at hand.

First, the cases cited above involved not a dispute over the amount of pecuniary damages, but the landlord's right to repossession of the premises. In each case, the court determined that to cause the tenant to forfeit possession would result in a hardship to the tenant out of proportion to the breach. The Popes recognized that the breach of the addendum gave Hillsboro Plaza the right to terminate the lease, and they voluntarily vacated the premises in January of 2000. Thus this case does not require the court to balance the equities between the damages incurred by the landlord as a result of the breach and those which would accrue to the tenant upon repossession by the landlord.

Second, the facts of the cases cited by Popes are distinguishable from those in this case. In ***Hasden v. McGinnis***, Hasden transferred property valued at $125,000 to McGinnis in exchange for $50,000 and a ten-year lease containing an option to repurchase the property for the same amount. *Hasden*, 387 S.W.2d at 632. Rent checks paid directly by Hasden's tenant to McGinnis for January and February rent amounts subsequently were returned by the bank unpaid. *Id.* McGinnis failed to notify either Hasden or his tenant of the default until April. *Id.* Upon notification, rent for three months was tendered to Hasden and refused. *Id.* McGinnis filed a cause of action seeking forfeiture, and during the three years between the breach and trial, rental payments were timely made. *Id.* This Court noted that forfeiture of the lease would result not only in McGinnis regaining possession of the property, but in forfeiture of Hasden's option to repurchase the property. *Id.* We held that this would result in unconscionable unjust enrichment to McGinnis and refused to allow the forfeiture. *Id.*

***Hooton v. Nacarato GMC Truck, Inc.*** involved a twenty-five year lease of buildings and several acres of property pursuant to which the tenant was obligated to make repairs to the property. *Hooton*, 772 S.W.2d at 43. The lease gave the landlord the option to re-enter the property if a default was not cured within ten days of notice to the tenant. *Id.* Notice of needed repairs was given by the landlord in December, and within one week the tenant began seeking bids on contracts to

complete the repairs and so notified the landlord. *Id.* at 44. Repairs were begun in April and completed in May. *Id.* This Court held that the tenant had begun to cure the default when he began to seek bids for the necessary repairs, and that the lease did not contemplate that repairs be completed within the ten day period. *Id.* at 46.

In *Southern Region*, we held that special circumstances excused technical non-compliance with the lease terms. *S. Region Indus. Realty*, 612 S.W.2d at164. The lease at issue in *Southern Region* contained a renewal option requiring a 90-day notice of renewal. *Id.* at 163. The trial court found that notice had been mailed but not received by the landlord. *Id.* at 164 This Court noted that while the mailing of the notice by the tenant was not sufficient to give notice of renewal, the reliance on the mail in this case constituted "excusable fault" where the tenant had been in possession of the premises for fifteen years and there had been no injury to the lessor. *Id.* at 165.

The court in the cases discussed above relied on the equitable premise that the landlord should be placed in the same condition that it would occupy if no breach had occurred. *See, e.g., Hooton v. Nacarato GMC Truck, Inc.*, 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989). These cases do not stand for the proposition that the landlord should not receive pecuniary compensation for injuries sustained. Rather, in this case the Court balanced the damages in circumstances where repossession as sought by the landlord would result in damages to the tenant out of all proportion to those incurred as a result of the breach. The *Hasden* Court noted that the landlord who has a legal right to damages should not be allowed to "avail himself of that right for the purpose of injury or oppression." *Hasden v. McGinnis*, 387 S.W.2d 631, 632 (Tenn. Ct. App. 1964).

The courts of this State have recognized that modern commercial lease agreements are properly considered under contract principles, rather than as property conveyances. *See, e.g., Cain P'ship, Ltd. v. Pioneer Inv. Servs. Co.*, 914 S.W.2d 452, 455-59 (Tenn. 1996). In *Cain*, the Tennessee Supreme Court opined that "[t]he parties' rights and liabilities should turn on an interpretation of the lease, the conduct of the parties, and rules which are consistent with modern business practice." *Id.* at 459. In addressing the issue of forfeiture, the court adopted the Restatement of Property (Second) § 13.1 (1977), which provides:

Nonperformance of Tenant's Promise - - Remedies Available

Except to the extent the parties to a lease validly agree otherwise, if the tenant fails to perform a valid promise contained in the lease to do, or to refrain from doing, something on the leased property or elsewhere, and as a consequence thereof, the landlord is deprived of a significant inducement to the making of the lease, if the tenant does not perform his promise within a reasonable period of time after being requested to do so, the landlord may:

(1) terminate the lease and recover damages; or

(2) continue the lease and obtain appropriate equitable and

-5-

legal relief, including

(a) recovery of damages, and

(b) recovery of the reasonable cost of performing the tenant's promise.

*Id.*

In the case now before this Court, the addendum to the lease was executed in response to disputes between the parties, including the payment of rent. The addendum gave Hillsboro Plaza the right to terminate the lease and regain possession of the premises without notice upon a default in the rental payment terms. In paragraph five of the addendum, Hillsboro Plaza expressly reserved rights under the lease agreement not modified by the addendum. Paragraph 11 of the lease agreement provided that upon default

> this Lease Agreement may be terminated at the option of the Landlord, and said Landlord may immediately or at any time thereafter re-enter said demised premises or any part thereof in the name of the whole and declare the then remaining unpaid balance of the total rental due for the remainder of the term as if same were not so terminated immediately due and payable.

Payment of the August rent after the tenth constituted default under the addendum. Hillsboro Plaza notified Popes it was terminating the lease and retaining all rights under the terms of the lease. Popes voluntarily vacated the premises in January of 2000, and Hillsboro Plaza promptly mitigated its damages by re-leasing the premises. Under these circumstances, we agree with the trial court that Popes remained liable for the balance of the rental amounts, and that such damages as mitigated by Hillsboro Plaza work no injustice. We accordingly affirm the judgment of the trial court on this issue.

### *Waiver*

Popes submit that Hillsboro Plaza waived its right to forfeit the lease when it allowed Popes to remain on the premises for five months after the notice of termination. Hillsboro Plaza contends that Popes impermissibly raise this defense for the first time on appeal. In the alternative, it argues that allowing Popes to remain on the premises did not constitute a waiver, but resulted in mitigation of the forfeiture damages. Upon review of the record and the order of the trial court, we are satisfied that the issue of waiver was addressed below. We accordingly will consider it here.

The trial court found that Ms. Pope's testimony that she believed she was not obligated to pay additional rental amounts was not credible in light of her testimony that she remained in the premises despite an opportunity to occupy other premises rent free. Determinations of witness credibility by the trial court are accorded great weight on appeal. ***Randolph v. Randolph***, 937

S.W.2d 815, 819 (Tenn. 1996).  Absent clear and convincing evidence to the contrary, a trial judge's assessment of the credibility of a witness will not be reevaluated by the appellate courts.  *Wells v. Tennessee Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999).  As noted above, the lease provided that upon default Hillsboro Plaza could "declare the then remaining unpaid balance of the total rental due for the remainder of the term as if same were not so terminated immediately due and payable."  We are satisfied that Hillsboro Plaza mitigated its damages by permitting Popes to remain on the premises.  We further find no evidence in the record that Hillsboro Plaza waived its rights to enforce the terms of the lease.  We affirm on this issue.

### *Attorney's Fees*

Popes contend that the provisions for attorney's fees contained in the lease applied only to circumstances not found in this case, and that it was therefore error for the court below to award attorney's fees to Hillsboro Plaza.  Upon consideration of the relevant portions of the lease, we agree.  The 1998 addendum to the lease was silent on the issue of attorney's fees.  Paragraph 11 of the lease, the default provision, likewise made no provision for attorney's fees.  Paragraph 22 of the lease provided for the reimbursement of attorney's fees where Hillsboro Plaza incurred such fees to remove a tenant who failed to surrender the premises.  As noted, Popes voluntarily surrendered the premises.  Hillsboro Plaza therefore incurred no attorney's fees pursuant to the provisions of Paragraph 22.  Paragraph 30 of the lease provided for reimbursement of expenses, including attorney's fees, for costs of performing an obligation on the tenant's behalf should the tenant default.  Popes submit that attorney's fees related to the recovery of damages for the breach are not obligations assumed on its behalf and were not contemplated by this provision.  We agree.  The award of attorney's fees to Hillsboro Plaza is reversed.

### *Prejudgment Interest*

The trial court awarded Hillsboro Plaza prejudgment interest in the amount of $4,297.07.  Popes contend that this award was inequitable in light of the circumstances of this case.  They further contend that forfeiture damages are in the nature of a penalty, and that prejudgment interest amounts to a punitive "pile on."  In support of this contention, Popes cite Black's Law Dictionary for the definition of forfeiture as "something to which the right is lost by commission of a crime or fault or the losing of something by way of penalty."  *Black's Law Dictionary* 584 (5th ed.1979).

Popes' interpretation of the forfeiture in this case reflects only half of the definition found in Blacks'.  A forfeiture may be a penalty; or it may be a right which is lost.  In this case, Popes' breach of the addendum caused them to lose their right to possession of the premises.  By the terms of the lease, Hillsboro Plaza was entitled to be compensated for damages it incurred as a result of the breach.  Such damages are compensatory and not punitive in nature.  Likewise, the purpose of prejudgment interest is to compensate the plaintiff for the loss of the use of funds which were rightfully his.  *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

We review an award of prejudgment interest under an abuse of discretion standard.  *Id.*  We

will not overturn such an award unless it is unfair or inequitable under the circumstances of the case. *Id.* Upon review of the entire record in this case, we do not believe the award of prejudgment interest amounts to a penalty. Hillsboro Plaza lost the use of rental payments to which it was legally entitled. Prejudgment interest compensates Hillsboro Plaza for this loss. The judgment of the trial court is affirmed on this issue.

### *Conclusion*

The award of attorney's fees to Hillsboro Plaza is reversed. Judgment of the trial court is otherwise affirmed. Costs of this appeal are taxed to H. T. Pope Enterprises, Inc., and Hilda S. Pope, individually, and Terry W. Pope, individually, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE